The facts are stated in the opinion.
Clark, J.
This is a petition in error, filed in the late district court, praying the reversal of the judgment of the court of common pleas of this county.
It is alleged in the “substituted petition” and the amendment thereto, filed in the court below, in substance, that .on the 9th day of October, 1877, the defendant, William C. Newell, was elected to the office of sheriff of Highland county. That on January 7th, 1878, his official bond in the penal sum of $10,000, with the other defendants, Samuel E. Newell, Philip Kramer, J. H. Richards, Moses Calvert and C. C. Parks, as his sureties, was examined by the prosecuting attorney of the county and found to be in conformity to law, and at the same time was accepted and the sureties approved by the commissioners of the county; and,Jraving taken the necessarjr oath of office — indorsed on said bond — he entered upon the discharge of the duties of the office of sheriff of said county. That the condition of said bond is as follows :
“ The condition of this obligation is such, that whereas the above named Wm. C. Newell was, on the 9th day of October, A. D. 1877, duly elected to the office of sheriff of the county of Highland, in the state of Ohio. Now, if the said Wm. C. Newell, as such sheriff, shall punctually pay over to the parties entitled thereto, all moneys that shall come into his hands by virtue of his said office, and shall in all respects faithfully *205 and impartially discharge the duties pertaining to his said office of sheriff of said county according to law, then this obligation to be void, otherwise to be and remain in full force.
“ That on the- day of December, A. D. 1879, the said William C. Newell, as such sheriff, and by virtue of his said office, received a large sum of money, to-wit, the sum of twenty-nine hundred and fifty-three and T9-¡fy dollars, from said state of Ohio; twenty-one hundred and five and dollars of which belongs rightfully to said county of Highland, being the amount of costs due said county from said state of Ohio, in a certain criminal action tried in the court of common pleas, for said county, at the October term thereof, A. D. 1879, upon an indictment for arson, wherein the state of Ohio was plaintiff, and one Simon Murphin was defendant.
• “At the October term of the court of common pleas in and for the county of Highland, in the year A. D. 1879, the said Murphin having been indicted in said court for arson, was put upon his trial, and such proceedings were had that the said Murphin was in due course of law convicted of said crime. On the 26th day of November, A. D. 1879, the said Murphin was, in pursuance of said conviction, sentenced in said court and by Hon. S. F. Steel, judge thereof, to be imprisoned in the penitentiary of this state, and kept at hard labor (no part of which time to be in- solitary confinement'), for the term of one year, and that he, (the said Murphin), pay the costs of prosecution, taxed $2,925.61. On the 17th day December, A. D. 1879, the clerk of said court of Common Pleas, J. M. Hughey, made and certified under-his hand and the seal of said court, a complete bill of the costs of said prosecution, which bill the said S. F. Steel, judge of said court, did on the same day allow and certify to be correct, a true copy of which cost bill is hereto attached, marked “A,” and made a part hereof.
“ On the 16th day of December, A. D. 1879, the said Hughey, clerk of said court, duly and legally issued an execution upon said judgment for costs, directed to the sheriff of said county, which execution was duly returned by said sheriff, indorsed: ‘ No goods or chattels, lands or tenements found wherebn to levy.’ Said return was made within ten days from the time *206 of the issuance of said writ. The said Simon Murphin had no property in any other county whereon to levy. The said Murphin, after his sentence as aforesaid, was by said court ordered into the custody of the defendant Wm. C. Newell, sheriff of said county, and the said Newell, acting as such sheriff, thereupon took the said Murphin into his custody, and thereafter, and on the 18th day of December, A. D. 1879, delivered said Murphin into the custody of the warden of the penitentiary of the state of Ohio, and at the same time and acting by virtue of his said office, delivered to said warden said bill of the costs of said prosecution, certified and allowed as aforesaid. The said Warden thereupon, and on said 18th day of December, A. D. 1879, made and delivered to said William C. Newell, as such sheriff, a certificate of allowance upon the auditor of the state of Ohio, for the amount of said cost bill. The said auditor of state thereupon issued his warrant upon the treasurer of the said state of Ohio for said amount to discharge said cost bill, and delivered the same to said William C. Newell, who thereupon presented said certificate to said treasurer and received said amount thereon in payment of said cost bill, he, the said Newell, in the reception of said certificate from said auditor, and in presenting the same to said treasurer, and in receipt of said moneys, assuming to act, and acting in his official capacity as sheriff of said county as aforesaid.”
Upon the “certificate of sentence,” to which said cost bill was attached, there is the following:
The State of Ohio, '
To Sheriff of Highland County, Dr.
For prosecuting charges as per within account............ $2,925 61
For transportation charges, as follows:
Travel for self, 135 each way — 270 miles @ 8 cts. per mile...................................... $21 60
Transporting one convict 135 miles @ 8 cts. per mile.................................................. 6 75 28 35
Total............................................................................ $2,953 96
Received, Columbus, O., Dec. 18, 1879, of the Warden of Ohio Penitentiary, a certificate of allowance on the State Auditor for the above amount.
Wm. C. Newell, Sheriff.
*207 It is further averred that said Newell, as such sheriff, on December 27, 1879, paid to the treasurer of Highland county $766.10, part of said $2,105.23, “ received by him as aforesaid on account of said county of Highland, leaving the amount now in the hands of said sheriff by virtue of his said office, now due and payable to said county of Highland, the sum of thirteen hundred and thirty-nine y1^ dollars.”
Various demands by the plaintiff, by the prosecuting attorney, and by the commissioners of the county upon said William C. Newell to pay said sum of money so received by him and still unpaid to the treasurer of the county, or to any other person or persons authorized to receive it, are alleged, and that he had neglected, failed and refused to pay the same, or any part thereof, to the treasurer of the county, or any one else authorized to receive the same.
There is a prayer for judgment.
To the substituted petition, as amended, the said sureties demurred, on the ground that the same did not state facts sufficient to constitute a cause of action against them or.either of them. The court below sustained the demurrer, and the plaintiff not asking further to amend the petition, the court dismissed the same, and rendered judgment against the plaintiff for costs of suit- — to all which the plaintiff, by counsel, at the time excepted. The action of the court below in sustaining the demurrer of the sureties, dismissing the petition and rendering judgment for costs of suit, is assigned for error.
This case is one of importance. Not alone on account of the amount of the money sought to be recovered, but as to the questions involved. We have no decision of the supreme court, that we are aware of, directly in point, or any that affords us very much aid in arriving at our conclusions. The contention on behalf of the plaintiff in error is, that the sureties on the official bond of the sheriff are liable on the grounds:
First — That the money sought to be recovered was received by him in his official capacity and by virtue of his office'of sheriff, and that his failure to pay it over on demand was a breach of his official bond.
Second — That, if it was not received in accordance with the strict letter of the statutory provisions defining his duties, *208 yet it was received under color of office, and his sureties are liable.
On the other hand it is contended, “ that the money alleged to have been collected by the sheriff was not collected by him in the performance of any official duty, nor under color of office, and hence, that his sureties are not liable.”
“That it was no part of the sheriff’s duties to collect this money, and neither the auditor or treasurer (of state) had any right to pay it to him. He had no order for it, nor any writ of any kind, and if they paid it to him it was the same as if they had trusted it to any stranger.”
The solution of the first proposition depends upon the construction to be put upon the several sections of the Revised Statutes, to which our attention has been called. On behalf of plaintiffs we are cited to sections 1203, 7330'to 7337, inclusive, and particularly to sections 7333 and 7334; and, on behalf of defendants, to sections 1211, 7332 to 7337, inclusive, and particularly to sections 1211 and 7337.
Sec. 1203, provides, among other things, that the sheriff and coroner shall each give bond with two or more sureties, approved by the county commissioners, “ conditioned for the faithful performance of their’ respective duties.”
Sec. 7330 provides, that: “ A person sentenced to the penitentiary shall, within thirty days after his sentence, unless the execution thereof be suspended, be conveyed to the penitentiary by the sheriff of’ the county in which the coviction was had, and delivered into the custody of the warden of the penitentiary, together with a copy of the sentence of the court,” etc.
Sec. 7331, provides for the use of jails, assistance, etc.
“ Sec. 7332. Upon the sentence of any person for felony, the officers claiming costs made in the prosecutionfshall ’deliver to the clerk itemized bills thereof, who shall make and certify, under his hand and the seal of the court, a complete bill of the costs made in the prosecution * * * which, if correct, the judge of the court shall allow-and certify.”
“ Sec. 7333. The clerk shall immediately issue to the sheriff of the county in which the indictment was found, and to the sheriff of any other county in which the convict has *209 property, executions against his property for the costs of prosecution, which shall be served and returned within ten days, with the proceedings of the sheriff indorsed thereon, or the want of property upon which to levy the same, as the case may be; when a levy is made upon property under such execution, a writ shall immediately be issued by the clerk for the sale thereof; and the sheriff shall proceed to sell the property as in other oases, and make retftrn thereof according to law, and after paying the costs of conviction, and of execution and sale, pay the balance to the person authorized to receive the same.”
“Sec. 7334. If the convict is sentenced to confinement in the penitentiary, and no property has been levied upon, the sheriff shall deliver such certified cost bill, having credited thereon any sums paid on costs, with the convict, to the warden of the penitentary; but, when property has been levied upon and remains unsold, the clerk shall not certify to the sheriff the costs of such conviction, or any part thereof, for payment from the state treasury; but the convict shall be delivered to the warden of the penitentiary, in pursuance of his sentence, upon payment of the costs of transportation alone.”
Sec. 7335, provides for the employment of guards, the sheriff’s mileage, etc.
Sec. 7336 provides: “ When the clerk certifies on the cost bill that execution was issued according to the provisions of this chapter, and returned by the sheriff indorsed, ‘ No goods or chattels, lands or tenements found whereon to levy,’ the warden shall allow so much of the cost bill ■arid'charges', as lié finds to be correct, and certify such allowance, which shall be paid by the state.”
“ Sec. 7337‘ Upon the return of the writs against the convict, if an amount of money has not been made sufficient for the payment of the costs of conviction, and no additional property is found whereon to levy, the clerk shall certify such fact to the auditor of state, under his seal, with a statement of the total amount of costs, the amount made, if any, and the amount remaining unpaid, which amount remaining unpaid, or so much thereof as the auditor finds to be correct, shall be paid by the state to the order of the clerk.”
*210 Sec. 1211, provides that the sheriff shall preserve the public peace, etc., “ and shall execute all warrants, writs, and other process to him'directed by the proper authority.”
What is the true construction to be given to these several sections ? It is strenuously contended, “ that the cost bill furnished by the clerk, certified by the judge, and also by the warden, was in no sense#a writ, warrant or process issued to the sheriff within the purview of Sec. 1211; and, that the money did not, therefore, come into his hands by virtue of his office.”
And further, “ that sec. 7337 settles who is to draw the warrant and in favor of'whom it is to be drawn. It is the duty of the auditor to issue his warrant to the clerk, and to nobody else. The very fact that he is named, necessarily excludes all other persons. If, therefore, the auditor did issue his warrant to the sheriff, it was without authority, and in violation of the statute.”
After as careful an examination as we have been able to give to the subject, we cannot accede to these contentions. Taking the sections altogether, we are, if we can do so, to ascertain the intention of the legislature in their enactment.
Three classes of cases seem to be provided for: 1. If sufficient property of the convict is found out of which to make the costs of prosecution, then, by levy and sale, they are to be made out of it. 2. If no property is found whereon to levy, the costs are to be paid by the state. 3. If an amount of money has not been made sufficient for the payment of the costs of conviction, and no additional property is found whereon to levy, then the amount remaining unpaid is to be paid •by the state.
“Upon the sentence” the “complete bill of the costs made in the prosecution” is to be made and certified as provided in sec. 7332. “The clerk shall immediately issue” the executions provided for in sec. 7333, directed as therein provided, “ which shall be served and returned within ten days, with the proceedings of the sheriff indorsed thereon, or the want of property upon which to levy the same, as the case may be.” When property is levied upon, the sheriff shall sell it “ as in other cases,” * * * “ and after paying the costs of conviction *211 and of execution and sale, pay the balance to the person authorized to receive the same.” If the amount of the costs of conviction had been made on execution, and the sheriff had failed, upon demand made, to pay the same, of course, the sureties would have been liable, because he would have been charged with the duty of payment. True, in such case, he would have received the amount under or by virtue of “ a writ;” but nevertheless, he is, in the legislative mind, associated with the duty of payment.
Immediately following, section 7334, we find the provision, that if “ no property has been levied upon,” — which was the case here — “ the sheriff shall deliver such certified, cost bill, having credited thereon any sums paid on costs, with the convict, to the warden of the penitentiary.” Why, or what for? As a mere idle ceremony, or for some purpose ? The section further provides : “ but when property has been levied upon and remains unsold, the clerk shall not certify to the sheriff the costs of such conviction, or any part thereof, for payment from the state treasury, but the convict shall be delivered to the warden of the penitentiary, in pursuance of his sentence, upon payment of the cost of transportation alone.”
Here it is seen, by the latter clause of the section, that the certificate of the warden is treated or considered as actual payment, or the equivalent thereof. The convict is not to be delivered, except upon payment of the costs of transportation. The warden is not the custodian of the funds of the state, but he is invested with the exclusive right to allow and certify the cost bill, which is, in substance, payment — as neither the auditor of state, or the treasurer, have any right to go back of the allowance and certificate, and the duty of the one to issue his warrant and of the other to pay the money is imperative.
When the clerk certifies, as required by sec. 7336, that the return shows “ no goods or chattels, lands or tenements, found whereon to levy, the warden shall allow so much of the cost bill and charges of transportation as he finds to be correct, and certify such allowance, which shall be paid by the state.” To whom, and when ? Can there be any well-founded doubt on this subject, as to the intention of the legislature? In the case provided for in this last named section, it will be seen by recur *212 ring to sec. 7334, that “ the sheriff shall deliver such certified cost bill, * * , * with the convict, to the warden of the penitentiary.” If property levied upon remains unsold, “ the clerk shall not certify to the sheriff the costs of conviction, or any part thereof, for payment from the state treasury.” Now, can any implication be clearer than that the money is to be paid to the sheriff “by the state,” when he delivers the convict, with the cost bill, and obtains the certificate of allowance — the certificate itself, as before shown, being considered as equivalent to payment, and entitling the holder, as a matter of course, to draw the money? A thing within the reason of a statute, or necessarily implied, is as much within the enactment as if set forth in so many words. The sheriff being in the capital, and having delivered the convict and obtained the certificate for the payment of the money, does any one suppose that the legislature, in such a case, ever contemplated or intended that he should, instead of stepping into the state-house and getting the money and taking it home with him — carry the certificate back with him and hand it to the clerk, so that he might go or send up to the capital and get the money? No such absurdity could have been intended. Why should there be a discrimination against the sheriff and in favor of the clerk? They are elected by the same constituency; each takes an oath of office and has to give bond for the faithful discharge of his duties, and both are agents of the county within the scope of their respective duties.
As to the claim that the cost bill furnished by the clerk, certified, etc., was in no sense a'writ, warrant or process issued to the sheriff, and that the money did not, therefore, come into his hands by virtue of his office under the provisions of section 1211, defining the duties of sheriffs, we have to say, that it was as competent for the legislature to provide special duties to be performed by sheriffs as to define generally their duties. The provisions of sec. 1211 are general provisions, and the special provisions of the other sections cited are in addition thereto. Where there is conflict between general and special provisions, the special provisions can, and should, be read as exceptions to the general provisions.. As said by Minshall, J., in the case of The State ex rel. Richard B. Crawford v. John McGregor, Clerk, *213 et al, 17 Weekly Law Bulletin (No. 5), p. 98: “This is in accordance with the established rule of construction, where the general provisions of a statute are varied by the special provisions of the same, or an other statute, relative to the subject. The courts presume an intention in the legislature to be consistent in making laws; and, also, to have had a purpose in each enactment and all its provisions. Special circumstances often create a necessity for appropriate special provisions, differing from the general rule on the subject: and so when such provisions are found in a statute, different from the general provisions that would apply to the case, the courts naust assume that the special provisions were made for adequate reasons, and give them effect by construing them as exceptions to the general rule contained in the general provisions of the statute. In this way, without disregarding any of its provisions, effect is given to each and all the provisions of a statute. Potter’s Dwarris, 272: Sedgwick Stat. Law, 423.”
“ Where a general intention is expressed in a statute, and the act also expressed a particular intention, incompatible with the general intention, the particular intention shall be considered as an exception.” Sedgwick on Construction, 361.
The further claim in behalf of the sureties, that sec. 7337 settles who is to draw the warrant and in favor of whom it is to be drawn; that it is to be drawn in favor of'the clerk, and nobody else, we think a clear misconception of the provisions of the section. The section has no application whatever to this case, as will be seen by an examination of it, and only applies to that class of cases where property has been levied upon; part of the money made, but an amount not sufficient for the payment of the costs of prosecution, “ and no additional property is found whereon to levy.” In such case, the clerk is to “ certify such fact to the auditor of state ” (not a complete bill of the costs of prosecution to be certified to the sheriff and by him delivered, with the convict, to the warden, for payment from the state treasury, as in the case under consideration) “ with a 'statement of the total amount of costs, the amount made, if any, the amount remaining unpaid, which amount so remaining upaid, or so much thereof as the auditor” (not the warden, as in the case under consideration) “finds to be *214 correct, shall be paid by the state, to the order of the clerk.” These provisions apply to the third class of cases, not to the second, as does the case under consideration. Besides, in this class of cases, where there is a levy upon property; time required to advertise and sell the same — or if remaining unsold —the sheriff is required by secs. 7330 & 7334, within thirty days after sentence, to deliver the convict, together with a copy of the sentence of the court only, into the custody of the warden, upon payment of the costs of transportation alone. So that, before the time arrives for the clerk to take action under sec. 7337, the sheriff will have performed his duties and left the capital. In such case, the clerk being the custodian of the records of the court in which the conviction was obtained, and having access to the records and the means to ascertain the total amount of the costs, the amount made, and the amount remaining unpaid, it was obviously proper, in such case, to provide that'such balance should be paid by the state to his order. The legislative mind seems to have grasped or comprehended the whole subject in all its bearings. The clerk being at home in his county, and it not being presumed that he would be at the capital to receive, in person, the amount remaining unpaid, in the class of cases where he is to receive the money, the provision is: “shall be paid by the state, to the order of the clerk.” As to the sheriff, his presence at the capital to deliver the convict being contemplated and provided for, and also, that the convict is to be delivered upon payment of the costs of conviction or the costs of transportation alone, as the case might be, provision is made for the allowance of and certifying the amount, “ which shall be paid by the state,” of course, to the sheriff, in person, he being present.
Conceding the claim made on behalf of the sureties, “ that they have the right to stand on the exact letter of the bond,” yet, we think that the sheriff had lawful right to receive the money so received by him; that it was received and came into his hands by virtue of his said office, and his failure to pay over the same to the parties entitled thereto upon demand made, was a breach of the condition of the bond. It follows that upon a strict construction of the bond, the defendants must be liable thereon.
*215 But suppose we are wrong in this, and that the money was not received by the sheriff in accordance with the strict letter of the statutory provisions defining his duties; yet can there be any well founded doubt but that it was received under color of office, and having violated his duty in failing, upon demand made, to pay it over to the parties entitled thereto, that his sureties are liable for such default?
In the case of City of Lowell v. Joseph Parker et al., 10 Metc. (Mass.), 309, 314, the first proposition of the syllabus is:
“ If a constable takes goods on a writ dircted to him, in which the damages are laid at a greater sum than seventy dollars, and makes return that he has attached the goods by virtue of the writ, he acts under color of office, and the sureties on his official bond are liable for the malfeasance.” Shaw, C. J„ in delivering the opinion, on pp. 313-14, says :
“ It is objected in the present case, that the sureties are not liable, because the constable undertook to make an attachment on a writ, in which the ad damnum exceeded $70, and which, therefore he had no authority to serve. But we think, the objection cannot be sustained. He was an officer, had authority to attach goods on mesne process, on a suitable writ, professed to have such process, and thereupon took the plaintiff’s goods; that is, the goods of Beam for whose use and benefit this action is brought, and who, therefore, may be called the plaintiff. He therefore took the goods colore officii, and though he had no sufficient warrant for taking them, yet he is responsible to third persons, because such taking was, a breach of his official duty. Grinnell v. Phillips, 1 Mass., 530. That the property sued for, except the forks, was taken colore officii, is manifest from the constable’s return on the writ, and also from a schedule certi-* fied by him in his official capacity, stating that he had attached the property on the process, at the suit of Saunders v. Beam. Both of them purport to be official acts, done by Parker by color of his office, as constable, and this is sufficient to give a remedy to persons injured by his violation of official duty. The sureties, in this respect, stand to the constable nearly in the same relation in which a sheriff stands to his deputy, for whose conduct he is responsible.”
Here the officer assumed to act officially under a writ, which on its face showed that he had no authority whatever *216 under it — the same as to him as no writ at all — yet, he was held to have acted under color of office, and that his sureties were liable.
In Knowlton v. Bartlett, 1 Pick., 271: “ A deputy sheriff was ordered to attach certain real estate, which he did. He after-wards told the debtor, who was ignorant that the writ had been served, that he was going to attach personal property. The debtor asked him if money would not answer, and he replied it would. Upon which he received of the debtor a sum of money, and made return that he considered it as personal property attached. The deputy embezzled the money, and the sheriff was held responsible to the debtor who had been compelled to satisfy an execution issued in favor of the creditor.”
•The court say, p. 274: “If the act from which the injury arose, was an official act, the authorities are clear that the sheriff is answerable; if it was not an official, but a personal act, it is equally clear that he is not answerable. But an official act does not mean what the deputy might lawfully do in the execution of his office; if so, no action would ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office■ In the present case the deputy had a writ of attachment, and was directed to atttach a particular parcel of real estate, which he did. It is said that the writ was then functus officio. It may be true that nothing more could legally be done under it; but the question is, whether the subsequent receiving of the money was not under color of officeThe defendant was defaulted, .and judgment was entered for the plaintiff for the sums of „money paid by him, with interest from the time of payment. See also, Harrington v. Fuller, 18 Me., 277.
In Ohio, for use of Story, v. Jennings et al., 4 Ohio St., 418, the syllabus is: “ A seizure of the goods of A., under color of process against B., is official misconduct in the officer making the.' seizure; and is a breach of the condition of his official bond, where that is, that he will faithfully perform the duties of his office. Th°e reason for this is, that the trespass is not the act of a mere individual, but is perpetrated cobre officii. For such a breach, an action on the bond lies against the officer and his sureties.”
*217 Thurman, C. J., in .delivering the opinion of the court, p. 423, says:
“The authorities seem to us quite conclusive, that a seizure of the goods of A. under process against B. is official misconduct in the officer making the seizure; and is a breach of the condition of his official bond, where that is, that he will faithfully perform the duties of his office. The reason for this is, that the trespass is not the act of a mere individual, but is perpetrated colore officii. If an officer, .under color of a fi. fa., seize property of the debtor that is exempt from execution, no one, I imagine, would deny that he had thereby broken the condition of his bond. Why should the law be different if, under color of the same process, he take the goods of a third person? If the exemption of the goods from execution in the one case, makes their seizure official misconduct, why should it not have the like effect in the other? True, it may sometimes be more difficult to ascertain the ownership of goods, than to know whether a particlar piece of property is exempt from execution; but this is not always the case, and if it were, it would not justify us in restricting to litigants, the indemnity afforded by the official bond, thus leaving the rest of community with no other indemnity against official misconduct than the responsibility the officer might furnish.”
This question was very fuly discussed and considered, in a late case in the court of appeals of New York, The People v. Schuyler, 4 Comstock, 173; and the authorities reviewed. It was an action of debt against a sheriff and his sureties, upon his official bond, conditioned, that he would “ well and faithfully in all things, perform and execute the office of sheriff of said county of Rensalear, during- his continuance in office by virtue of his election thereto, without fraud, deceit or oppression.” The alleged breach was, that under color of a writ of attachment against one Fay, he had seized the goods of one Batchellor, for whose use the suit was brought. The court held that the action was maintainable, and sustained their opinion by a citation of numerous authorities, English and American, which it is unnecessary to repeat. I may add, however, that the same doctrine seems to prevail generally. See Archer v. Noble et al., 3 Greenleaf, 418; Harris v. Hanson, 11 *218 Maine, 241; Skinner v. Phillips, 4 Mass., 68; Lowell v. Parker, 10 Metc., 309; Carmack v. The Commonwealth, 5 Binney, 184; Forsythe v. Ellis, 4 J. J. Marshall, 298; Commonwealth v. Stockton et al., 5 Monroe, 129; Derby’s Ed., 193.
Applying the principle recognized by the authorities cited, it seems clear to us that, even if the money received by the sheriff and sought to be recovered in this case, was not received by him strictly in accordance with the statutory provisions defining his duties — or by a strict construction its receipt was not authorized thereby — yet, that it cannot be doubted but that it was received by him colore officii. He was the duly elected, qualified and acting sheriff of the county; the convict was in his custody and delivered by him into the custody of the warden of the penitentiary, together with a duly certified copy .of the sentence of the court in which the convict was tried, convicted, and sentenced. He also, went armed, with the “complete bill of the costs made in the prosecution,” and, upon the “ certificate of sentence” to which said cost bill was attached, there was the summarized .account of the costs of prosecution and transportaren, headed:
“The State of Ohio,
To Sheriff of Highland County, Dr.”
As such officer he obtained from the warden of the penitentiary, a certificate of allowance on the state auditor for the amount, and gave to that officer a receipt for the same signed as sheriff. Thereupon, assuming to act, and acting, as is alleged, in his official capacity as such sheriff, he obtained from said auditor a warrant upon the treasurer of state for the amount of said cost bill, upon which he received the money from the treasurer of state.
Under these circumstances, it seems clear to us, that the money was received by Newell under color of office, and having failed, upon demand made, to pay it over to the persons entitled thereto, that his sureties are liable therefor.
It follows, that the court of common pleas erred in sustaining the demurrer of the sureties to the substituted petition as amended, in dismissing the same and in rendering judgment against the plaintiff for costs of suit. For which errors the judgment of the court of common pleas is reversed, with costs, *219 and the cahse remanded to that court to be further proceeded in according to law.
Mr. Worley, Pros. Att’y, and John O. Hire, for plaintiff.
Hart & Hough and TJlric Sloan, for defendants.
Cherrington and Bradbury, J.J., concur.